UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MENNIE R. HUDSON,

**REPORT**
**and**
**RECOMMENDATION**

Plaintiff,

------------------------------

v.

**DECISION**
**and**

JOHN E. POTTER, Postmaster General,

**ORDER**

Defendant.

**04-CV-0278A(F)**

_____

APPEARANCES:      OFFERMAN, CASSANO, GRECO & SLISZ LLP
                  Attorneys for Plaintiff
                  JOSEPHINE A. GRECO, and
                  KEVIN P. WICKA, of Counsel
                  1776 Statler Towers
                  Buffalo, New York 14202

                  TERRANCE P. FLYNN
                  UNITED STATES ATTORNEY
                  Attorney for Defendant
                  MARY K. ROACH
                  Assistant United States Attorney, of Counsel
                  Federal Centre
                  138 Delaware Avenue
                  Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on

September 7, 2004, for pretrial matters, including report and recommendation on

dispositive motions.  The matter is presently before the undersigned on Defendant's

motion seeking partial summary judgment or dismissal of the complaint (Doc. No. 17),

filed September 15, 2005, and Plaintiff's cross-motion for discovery pursuant to Rule

56(f) (Doc. No. 23), filed October 14, 2005.[1]

## BACKGROUND

Plaintiff Mennie R. Hudson ("Plaintiff"), an African-American female, commenced this action on April 12, 2004, alleging that she had been subjected to race-based employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII").  On August 31, 2004, Defendant filed a motion to dismiss the Complaint (Doc. No. 2) ("motion to dismiss"), with supporting papers and exhibits (Doc. Nos. 4 and 5).  On July 26, 2005, Plaintiff filed an Amended Complaint (Doc. No. 14) ("Amended Complaint"), asserting three cause of action including (1) hostile work environment, Amended Complaint ¶¶ 66-74 ("First Cause of Action"); (2) disparate treatment, Amended Complaint ¶¶ 75-85 ("Second Cause of Action"); and (3) retaliation, Amended Complaint ¶¶ 86-93 ("Third Cause of Action").  To date, Defendant John E. Potter, Postmaster General of the United States Postal Service ("Defendant"), has not filed any answer.

On September 15, 2005, Defendant filed the instant motion seeking partial summary judgment or dismissal of the Amended Complaint in its entirety (Doc. No. 17) ("Defendant's motion").  Defendant's motion is supported by a Memorandum of Law (Doc. No. 18) ("Defendant's Memorandum").  Defendant's motion is also supported by several documents which incorporate by reference several of the papers and exhibits

---

[1] Although Defendant's motion for partial summary judgment or dismissal is dispositive, whereas Plaintiff's cross-motion for discovery is nondispositive, the court addresses both motions in this combined Report and Recommendation and Decision and Order in the interest of judicial economy.

filed in support of the motion to dismiss.  Specifically, a statement of Facts

(Supplemental) Not in Dispute (Doc. No. 19) ("Defendant's Facts Statement"),

incorporates by reference the Statement of Material Facts not in Dispute (Doc. No. 4),

with the exhibits contained in the Appendix to Statement of Material Facts (Doc. No. 5),

containing Defendant's exhibits A through K ("Defendant's Exh(s). __"), filed in support

of the motion to dismiss.  Defendant also filed a Supplemental Appendix to Statement

of Material Facts (Doc. No. 20), containing Defendant's exhibits L through S

("Defendant's Supplemental Exh(s). __").

On October 14, 2005, Plaintiff filed a cross-motion seeking discovery pursuant to

Rule 54(f) (Doc. No. 23) ("Plaintiff's Motion"), a Memorandum of Law in Opposition to

Defendant's Motion and in Support of Plaintiff's Motion (Doc. No. 24) ("Plaintiff's

Memorandum"), the Affidavit of Mennie R. Hudson (Doc. No. 25) ("Plaintiff's Affidavit"),

Plaintiff's Supplemental Counterstatement of Contested Facts in Opposition to

Defendant's Motion (Doc. No. 26) ("Plaintiff's Supplemental Fact Statement"), and the

Affidavit of Josephine A. Greco, Esq. (Doc. No. 27) ("Greco Affidavit"), with attached

exhibits ("Plaintiff's Exh(s). __").  Plaintiff's papers incorporate by reference papers filed

in opposition to the earlier motion to dismiss, including the Affidavit of Josephine A.

Greco, Esq. (Doc. No. 9) ("First Greco Affidavit") with attached exhibits ("Plaintiff's First

Set of Exh(s). __"), the Affidavit of Mennie R. Hudson (Doc. No. 10) ("Plaintiff's First

Affidavit"), and a Memorandum of Law (Doc. No. 11) ("Plaintiff's Memorandum in

Opposition to Motion to Dismiss").

On October 24, 2005, Defendant filed a Reply Memorandum of Law in further

support of Defendant's motion (Doc. No. 29) ("Defendant's Reply"), and a

Memorandum of Law in Opposition to Plaintiff's Motion (Doc. No. 30) ("Defendant's Response").  On November 4, 2005, Plaintiff filed the Reply Affidavit of Mennie R. Hudson in further support of Plaintiff's motion (Doc. No. 31) ("Plaintiff's Reply Affidavit"). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion for partial summary judgment or dismissal of the Amended Complaint should be GRANTED in part and DENIED in part without prejudice; Plaintiff's cross-motion seeking discovery pursuant to Rule 54(d) is DISMISSED as moot.

## **FACTS**[2]

Plaintiff Mennie R. Hudson ("Plaintiff" or "Hudson"), an African-American female, commenced employment as a full-time letter carrier with the United States Postal Service ("the USPS" or "the Postal Service"), in May 1990, assigned to the Central Park Station in Buffalo, New York.  Hudson maintains that throughout her tenure with the Postal Service, she was the subject of race-based employment discrimination, and was retaliated against for complaining about such discrimination.

As of May 1995,[3] Hudson's Station Manager was Katherine Dunshie ("Dunshie"). Sometime during 1995, one James Lentz ("Lentz"), was transferred into Central Park Station as Acting Station Manager.  On May 18, 1995, Hudson was working at the Central Park Station in a "limited duty" capacity because of an ankle injury, when

---

[2] Taken from the pleadings and motion papers filed in this action.

[3] The exact date in May 1995 is not specified.

Dunshie advised Hudson that Hudson would no longer be permitted to work in such capacity, and reassigned Hudson to another station.[4]

On July 5, 1995, Hudson filed her first of four administrative Equal Employment Opportunity ("EEO") complaints in Equal Employment Opportunity Commission ("EEOC") case No. 4B-140-1085-95 ("First EEO Complaint"), alleging employment discrimination based on race and color premised upon Dunshie's refusal to permit Hudson to continue working in a limited duty capacity, and reassigning Hudson to a different work station.  Hudson sought as relief Dunshie's transfer to another station. The Final Agency Decision ("FAD") denying the First EEO Complaint was issued on December 27, 1995, thereby granting Hudson the right to file a civil action regarding the administratively grieved claims, which Hudson failed to file.

In June 1996, Hudson was suspended for 14 days for leaving her mail route to use the bathroom in Hudson's home, which is located within Hudson's assigned mail route and had been approved by an unspecified supervisor for Hudson's breaks; Hudson maintains white employees were allowed to take breaks their homes provided the homes were located within their assigned routes.  In July 1996, Dunshie and Lentz disciplined Hudson for taking her lunch break at the end of Hudson's shift.  Hudson maintains that during this time, various Postal Service employees, agents and servants followed Hudson on her mail route and scrutinized her job performance.  Hudson first sought medical treatment for emotional distress allegedly suffered because of the employment discrimination, retaliation and harassment Hudson encountered performing

---

[4] Hudson does not identify the station to which Dunshie reassigned Hudson on May 18, 1995.

her letter carrier job.

On September 6, 1996, Hudson filed her second EEO Complaint in EEOC case No. 4B-140-1110-96 ("Second EEO Complaint"), alleging employment discrimination based on race and color.  In particular, Hudson challenged as racially discriminatory the 14-day suspension received in June 1996.  The FAD denying Hudson's Second EEO Complaint was issued on February 14, 2000, thereby granting Hudson the right to file a civil action regarding the administratively grieved claims, which Hudson also failed to commence.

In September 1997, Dunshie and Lentz were transferred out of the Central Park Station.  Near the end of 2000 or beginning of 2001, however, Lentz was transferred back to the Central Park Station as Acting Station Manager, at which time Hudson maintains Lentz resumed the discrimination, harassment and retaliation against Hudson.  In particular, on February 1, 2001, Hudson's immediate supervisor, Marek Usewicz ("Usewicz"), followed Hudson on her mail route for the entire day and, later that same day, Usewicz was joined by Lentz.  On April 2, 2001, Hudson formally complained of the alleged discriminatory treatment by letter to then Postmaster General William Henderson, complaining that she had initially been harassed by Dunshie, and then by Lentz, based on Hudson's race.  According to Hudson, on January 31, 2001 and February 21, 2001, days that Hudson was not assigned to work, Hudson's supervisors tried to coerce the substitute letter carriers covering Hudson's mail route to complete the route in less than the allotted eight hours.  Hudson maintains she received a response to the letter indicating her complaints, raised in her April 2, 2001 letter, would be investigated, but Hudson was never contacted by the Postal Service regarding

the complaints and no action was ever taken to rectify the matter.  Amended Complaint ¶ 30.

Hudson alleges that beginning in May 2001, Dunshie, Lentz and other Central Park Station supervisors began discriminating against African-American employees as to the manner in which African-American letter carriers were permitted to carry their mail for delivery.  Mail is prepared for delivery by sorting it into individual sections or "cuts."  Upon arriving at a "park point" along the letter carrier's mail delivery route, the letter carrier parks the mail truck and selects the mail "cut" containing the mail to be delivered along that portion of the route.  Each cut of mail is to be delivered in its entirety before the carrier returns to the mail truck, drives the truck to the next park point, parks the truck and selects the next mail cut for that portion of the route.

According to Hudson, she and other African-American letter carriers were only permitted to break up a cut if the cut exceeded a certain weight limitation - 35 pounds - whereas white letter carriers were not subjected to similar restrictions.  In May 2001, Lentz altered Hudson's mail route by eliminating three park points, resulting in heavier mail cuts.  When Hudson complained to Acting Supervisor Jason Keith ("Keith") that the elimination of the park points resulted in mail cuts that were too heavy for Hudson, no remedial action was taken.  On May 29, 2001, Hudson injured her neck and right shoulder carrying heavy mail cuts.  On June 22, 2001, the heavy mail cuts caused Hudson to injure her back, although Hudson did not file an injury report regarding her back injury with the Postal Service because the injury was not as severe as the earlier neck and shoulder injuries.  On June 26, 2001, Hudson filed a union grievance regarding the park point assignments and mail cut requirements.

7

On July 3, 2001, Hudson filed her third EEO Complaint in EEOC case No. 4B-140-0050-01 ("Third EEO Complaint"), alleging employment discrimination based on race and color, on the basis that in April 2001, Lentz unnecessarily inspected Hudson's letter carrier route, and that Hudson's route was overburdened by the elimination of park points and resulting heavier mail cuts, which caused Hudson to sustain injuries on May 29 and June 22, 2001.  On July 29, 2001, Hudson attended pre-complaint counseling with an EEO Dispute Resolution Specialist, regarding the claims raised in the Third EEO Complaint.  On August 1, 2001, Hudson received a disciplinary Letter of Warning, dated July 19, 2001 ("Letter of Warning"), charging Hudson with failing to report the June 22, 2001 back injury as required.  On August 17, 2001, Hudson contacted the Postal Service's EEO to amend the Third EEO Complaint to include receipt of the Letter of Warning.

Hudson alleges that while the Third EEO Complaint was pending, Hudson continued to be subjected to discrimination, harassment and retaliation including discriminatory enforcement of USPS polices, discipline administration, and greater scrutiny than white employees.  In particular, Hudson maintains that her supervisors would stand within Hudson's view and stare while Hudson sorted her mail.  On April 23, 2003, Hudson injured her ankle while carrying a parcel of mail across a street. Although the injury was not serious and did not cause Hudson to miss any time from work, Hudson felt compelled to report the injury to her supervisors because she had been written up for failing to report the June 22, 2001 injury.

On June 3, 2003, Hudson, frustrated with the conduct of her supervisors, complaint to Central Park Station Manager Bernard Czechowski ("Czechowski"), that

the alleged conduct of her supervisors was both embarrassing and intimidating.  Later

that same day, Hudson received a second disciplinary Letter of Warning for "failing to

work safely" in connection with the April 23, 2003 incident in which Hudson injured her

ankle.  Plaintiff's First Affidavit ¶¶ 27-28.

The FAD denying Hudson's Third EEO Complaint was issued on January 15,

2004, thereby granting Hudson the right to file a civil action regarding the

administratively grieved claims.  Hudson commenced the instant action on April 12,

2004.

In her Complaint, Hudson cites other instances in which she maintains she was

subjected to racially discriminatory, harassing and retaliatory conduct based on criticism

for conduct for which white Postal Service employees were not similarly criticized.

Specifically, in February 2004, Hudson was criticized for sorting delivery point

sequencing ("DPS") mail[5] while in the Central Park Station.  In March 2004, Hudson

was criticized by her supervisor for incurring overtime while waiting in line to punch out.

On March 8, 2004, Hudson's supervisor screamed at Hudson and threatened to write

up Hudson for underestimating the amount of overtime needed to complete Hudson's

mail route that day.

On June 10, 2004, Hudson returned to work after a three-day absence.  Upon

reporting to the Central Park Station, Hudson was approached by Kenneth Brown

---

[5] Delivery point sequencing ("DPS") is a nationwide automated mail sorting system, the use of which eliminates the need for letter carriers to sort and "case" or arrange most letters for delivery.  *Richard v. U.S. Postal Service*, 219 F.Supp.2d 172, 176 & n. 4 (D.N.H. 2002).  Despite use of the DPS sorting technology, letter carriers must manually sort flats and "residual" letters that the automated sorting system cannot accommodate.  *Id.*

("Brown"), a supervisor, who accused Hudson of delaying mail delivery.  Hudson explains that letter carriers are required to hold back mail for recipients who had moved and left no forwarding address, and that because a large number of students live within Hudson's mail delivery route, Hudson tends to have a greater than average amount of undeliverable mail.  After 10 days, the letter carriers are required to complete "Moved Left No Address" forms for the undeliverable mail.  Hudson told Brown that she had requested permission to complete the "Moved Left No Address Forms" for the undelivered mail, but that Brown and another supervisor, Elton Barber ("Barber") denied the request, advising Hudson the task had been assigned to limited duty carriers.  Hudson maintains the limited duty carriers never completed the forms.

On June 10, 2004, Hudson began her mail delivery route 1 hour 45 minutes later than scheduled, having spent time completing "Moved Left No Address" forms for the undelivered mail.  Because Hudson had not been on her route for three days, there was a "significant amount of mail to pick up from the street."  Amended Complaint ¶ 54. Upon returning to the Central Park Station, Hudson had to sort through the street mail she had collected and provide the accountable mail to the clerk, resulting in Hudson's taking .12 units of overtime.  On June 12, 2004, Brown advised Hudson that the .12 units of overtime Hudson took on June 10, 2004 was unauthorized.

On June 12, 2004, Brown authorized Hudson for two hours of overtime based on a heavy mail load.  While Hudson was on her mail delivery route, however, she encountered a woman who harassed and followed Hudson along the route.  Hudson contacted the Central Park Station and reported the incident to supervisor Michael Snyder ("Snyder"), who met Hudson on the route and inquired as to whether Hudson

was comfortable delivery the remaining mail.  Hudson stated she was, and informed

Snyder that although Brown had authorized Hudson for two hours of overtime, time lost

because of the harassment incident would render Hudson unable to complete the route

and return to the Central Park Station within her allotted time.  Snyder advised Hudson

that no other carriers were available to help Hudson, but that Snyder did not want

Hudson bringing any mail back from the route, so Hudson was to finish delivering all the

mail.

On June 14, 2004, Hudson met with her union steward William Lewis ("Lewis"),

and Brown in the Central Park Station's Management Office regarding Hudson's use of

unauthorized overtime on June 12, 2004.  When Hudson explained why the additional

time was needed, Brown allegedly replied that Hudson's reasons were "irrelevant," that

Hudson failed to follow Brown's order, and that Hudson would be "written up" for

unauthorized overtime use.  Amended Complaint ¶ 58.  Hudson became upset, told

Brown she was unable to work under such stressful conditions, and went home.

Following this encounter with Brown, Hudson's psychiatrist issued an order that Hudson

not work for two months.

On June 22, 2004, Hudson received a seven-day, no time-off suspension for

using unauthorized overtime on June 10 and 12, 2004.  Hudson was also charged with

using unauthorized overtime on March 8 and 9, 2004, and for improper conduct relative

to Hudson's June 14, 2004 confrontation with Brown during which Hudson allegedly

used foul language.

On September 14, 2004, Hudson filed her fourth EEO Complaint in EEOC case

No. 4B-140-0063-04 ("Fourth EEO Complaint"), alleging employment discrimination and

11

retaliation based on race.  In particular, Hudson claimed to have been subjected to a continuing course of discrimination, harassment and retaliation, including extra scrutiny by supervisors, and being unnecessarily disciplined for taking unauthorized overtime. The FAD denying Hudson's Second EEO Complaint was issued on April 27, 2005.  On July 26, 2005, Hudson filed the Amended Complaint in this action to include facts and claims relative to the allegations in the Fourth EEO Complaint.

## DISCUSSION

Defendant moves for partial summary judgment or dismissal of the Amended Complaint on four grounds, including that Hudson (1) failed to exhaust administrative remedies as events occurring prior to May 2001 and, as such, the court is without jurisdiction over Hudson's claims based on these events; (2) failed to assert retaliation as a basis of her First, Second and Third EEO Complaints such that the court is without jurisdiction over Hudson's claims for retaliation pre-dating June 2004; (3) cannot establish the requisite causal connection between Hudson's prior protected activity and the claimed adverse employment action; (4) failed to exhaust administrative remedies as to disparate treatment claims pre-dating June 2004 and the court is therefore without jurisdiction over such claims; (5) failed to exhaust her hostile work environment claim such that the court is without jurisdiction over the claim; and (6) cannot establish the requisite elements for a hostile work environment claim because the alleged harassment endured by Hudson does not rise to the level of a hostile work environment.  Defendant's Memorandum at 2-3.  Hudson argues in opposition that Defendant's motion essentially seeks only partial summary judgment, rather than

dismissal of the Amended Complaint, and that the granting of summary judgment would, at this time, be premature insofar as discovery has yet to be conducted. Plaintiff's Memorandum at 9-12.  Hudson also maintains that Defendant has failed to meet its burden on summary judgment of demonstrating that no genuine issue of material fact exists which, if decided in Hudson's favor, would establish a *prima facie* case of retaliation or hostile work environment.  *Id*. at 12-14.  Hudson further argues that none of her claims are barred for failure to exhaust because all Hudson's Title VII claims were either included in an administrative charge or based upon conduct reasonably related to that alleged in an administrative charge.  *Id*. at 14-19. Hudson also opposes summary judgment on the merits of her retaliation and hostile environment claims.  *Id*. at 19-25.

Defendant, in further support of summary judgment, contends that the claims Hudson failed to raise in any EEO proceeding were not "reasonably related" to those claims Hudson actually filed with the EEOC and, as such, are subject to dismissal based on Hudson's failure to exhaust.  Defendant's Reply at 1-8.  Defendant further asserts that Hudson's hostile work environment must be dismissed because Hudson never alleged she was subjected to any hostile work environment but, rather, alleges only a few incidents of disparate treatment that are too remote in time to support a hostile work environment claim. *Id*. at 8-10.

In further opposition to Defendant's motion, Hudson urges the court to grant Plaintiff's motion seeking Rule 56(f) discovery to permit Hudson to obtain the information necessary to establish her disparate treatment and hostile work environment claims.  Plaintiff's Reply Affidavit ¶6.  Hudson specifically needs discovery

of personnel files and disciplinary histories of employees similarly situated to Hudson.
*Id*. ¶ 7.

### 1.      Failure to State a Claim and Summary Judgment

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court looks to the four

corners of the complaint and is required to accept the plaintiff's allegations as true and

to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974); *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375,

378 (2d Cir. 1995), *cert. denied*, 117 S.Ct. 50 (1996).  The court is required to read the

complaint with great generosity on a motion to dismiss.  *Yoder v. Orthomolecular*

*Nutrition Institute*, 751 F.2d 555, 558 (2d Cir. 1985).  The complaint will be dismissed

only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would

entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Goldman v. Belden*,

754 F.2d 1059, 1065 (2d Cir. 1985).

The issue on a motion to dismiss is not whether a plaintiff is likely to prevail

ultimately, "but whether the claimant is entitled to offer evidence to support the claims.

Indeed it may appear on the face of the pleading that a recovery is very remote and

unlikely but that is not the test."  *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d

Cir.1976) (quoting *Scheuer*, 416 U.S. at 236).  In the instant case, Defendant moves to

dismiss those claims for which Defendant maintains that Hudson has failed to exhaust

administrative remedies.

Pursuant to Fed. R. Civ. P. 12(b), if matters outside the pleading are presented

to and not excluded by the court, a party's motion to dismiss under Fed. R. Civ. P.

12(b)(6) shall be treated as one for summary judgment and disposed of as provided by Fed.R.Civ.P. 56.  However, where the party moving to dismiss has included in the motion papers information not found in the pleadings, provided the "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of transforming a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).   As stated, in the instant case, Defendant seeks dismissal of the complaint pursuant to Rule 12(b)(6) or, alternatively, summary judgment under Rule 56 on the basis that Hudson is unable to establish the elements of a *prima facie* case of employment discrimination or retaliation.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be

sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  Furthermore, although summary judgment may be granted prior to completion of discovery, Rule 56(f) provides that, where it appears from the affidavits of party opposing summary judgment that party is unable to present by affidavit facts sufficient to avoid summary judgment, the court may either deny summary judgment, or order discovery necessary to obtain such facts.  Here, Hudson moves pursuant to Rule 56(f) for discovery to oppose Defendant's motion insofar as it seeks partial summary judgment.

## 2.      Exhaustion of Administrative Remedies and Statute of Limitations

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and timely file a complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  "This exhaustion requirement is designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action to encourage the settlement of discrimination disputes through conciliation and voluntary compliance."  *Spurlock v. NYNEX*, 949 F.Supp. 1022, 1027 (W.D.N.Y. 1996).  Permitting a complainant to litigate claims not previously presented to and investigated by the administrative agency would circumvent Title VII's exhaustion requirement.  *Id*.  Further, a Title VII litigant is required to exhaust administrative remedies in a "timely fashion."  *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996). Failure to comply with the administrative exhaustion requirement will generally bar the plaintiff from later litigating such claims in court.  *Brown v. General Services Admin.*, 425 U.S. 820, 832-33 (1976).

According to the relevant regulations, an employee seeking to lodge an employment discrimination complaint against a federal employer must contact an EEOC counselor within 45 days of the alleged discriminatory or retaliatory act.  29 C.F.R. § 1614.105(a)(1).  If, after the mandatory EEOC counseling period, the matter is not resolved, the employee has 15 days from the date of the employee's final interview with the EEOC counselor to file a formal written administrative EEO complaint.  29 C.F.R. § 1614.106(e)(2).  An employee may not commence a civil action in federal district court until the earlier of either the filing of a formal administrative complaint and receipt of the FAD, or 180 days from the filing of the formal administrative complaint.  42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  Further, any civil action must be brought within 90 days of receipt of the FAD.  29 C.F.R. § 1614.407.

The timeliness of a Title VII claim may depend on whether it alleges a discrete act of disparate treatment or retaliation, or a hostile work environment.  In particular, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *See National Railroad Passenger Corp. v. Moran*, 536 U.S. 101, 113 (2002).  Hostile work environment claims are, however, "different in kind from discrete acts.  Their very nature involved repeated conduct."  *Id*. at 114 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-49 (3d ed. 1996)).  As such, an alleged hostile work environment is not a single act occurring on a specific day but, rather, "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Id*. (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21

17

(1993)).  So long as at least one incident alleged in support of a hostile work environment is included and exhausted in a timely administrative complaint, the hostile work environment claim will be considered timely exhausted.  *Id*. at 117 ("Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.") (bracketed text added).

In the instant case, Hudson's claims of disparate treatment based on race asserted in her First and Second EEO Complaints, including that Hudson was not permitted to work in a limited duty capacity whereas white Postal Service employees were, and was given a 14-day suspension for deviating from her mail delivery route to take breaks at Hudson's home, as did white Postal Service employees, are time-barred because Hudson did not commence the instant action within 90 days of receipt of the FAD notices with respect to such claims.  29 C.F.R. § 1614.407.  Specifically, the FADs were issued for the First EEO Complaint on December 27, 1995, and for the Second EEO Complaint on February 14, 2000,  yet the instant action was not commenced until April 12, 2004.  Declaration of EEO Compliance and Appeals Specialist Susan Flanagan ("Flanagan Declaration"), Defendant's Exh. B ¶¶ 5 and 7.  Significantly, Hudson does not argue otherwise.  As such, Hudson's claims asserted in her First and Second EEO Complaints should be DISMISSED because they were not timely filed within the requisite 90-days of receipt of the relevant FADs and are thus time-barred. Nevertheless, the factual allegations contained in Hudson's First and Second EEO Complaints may be considered in connection with Hudson's hostile work environment claim.  *See Morgan*, 536 U.S. at 117 (consideration of entire scope of hostile work

environment claim, including alleged behavior outside scope of statutory limitations period, is permissible for assessing liability so long as at least one act contributing to the alleged hostile work environment occurred within the statutory time period).

Defendant argues that certain of Hudson's other claims included in the Amended Complaint are barred based on failure to exhaust because Hudson failed to present such claims to the EEO counselor within 45 days of their occurrence.  Defendant's Memorandum at 5-7, 17-18.  Such allegations include (1) that between February and April 2001, Hudson's supervisor followed Hudson on her mail delivery route, Amended Complaint ¶¶ 28-29; (2) after Hudson complained to her supervisor on June 3, 2003, about supervisors staring at Hudson in an embarrassing and intimidating manner, Hudson received a letter of warning for failing to work in a safe manner, Amended Complaint ¶¶ 46-49; (3) in February 2004, Hudson was singled out and criticized for sorting DPS mail, incurring overtime while waiting in line to punch out, and underestimating the amount of overtime required to complete Hudson's mail delivery route, although white Postal Service employees were not criticized for similar conduct, Amended Complaint ¶¶ 50-53; and (4) in March 2004, Hudson was criticized and harassed by her supervisor for incurring a unit of overtime while waiting to punch her time card, Amended Complaint ¶ 52.  Defendant also asserts that insofar as Hudson's Third Cause of Action alleges retaliation based on incidents occurring prior to June 2004, such claims should be dismissed for failure to exhaust because the claims were not included in the First, Second or Third EEO Complaints.  Defendant's Memorandum at 12-13.  Defendant further argues that Hudson's First Cause of Action asserting a hostile work environment should be dismissed because Hudson never raised a hostile

work environment claim in any of the four EEO Complaints.  *Id*. at 18-20.

Hudson does not deny that she did not present such claims to the EEO counselor or raise them in her EEO Complaints; rather, Hudson maintains that such claims were reasonably related to the claims presented in the Third and Fourth EEO Complaints as to be considered exhausted.  Plaintiff's Memorandum at 5-13.

Claims not asserted before the EEOC, and which would thus be barred by the failure to timely exhaust may nevertheless by pursued in a subsequent civil action "'if they are reasonably related to those that were filed with the agency.'"  *Id*. (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)).  "'A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'"  *Id*. at 200-01 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)).  This exhaustion requirement exception "'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering.'"  *Id*. (quoting *Butts v. City of New York Dep't of Housing Preservation & Development*, 990 F.2d 1397, 1402 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998)).

Whether claims are reasonably related is based "'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'"  *Deravin*, 335 F.3d at 201 (quoting *Freeman v. Oakland Unified School District*, 291 F.3d 632, 637 (9th Cir. 2002)).  A claim is considered reasonably related "if

the conduct complained of 'would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Sasannejad v. University of Rochester*, 329 F.Supp.2d 385, 390 (W.D.N.Y. 2004) (quoting *Butts*, 990 F.2d at 1402)).  In particular, there are three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge, including: (1) claims where the conduct complained of would fall within the scope of the EEOC investigation; (2) claims alleging retaliation by an employer against an employee for filing an EEOC charge; and (3) claims where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Butts*, 990 F.2d at 1402-03.

In the instant case, the record establishes that Hudson did raise in her EEO Complaints several of the claims Defendant challenges as unexhausted.  First, according to a document entitled "Defining of the Issues," signed by both Hudson and an EEO Counselor,[6] ("Issues Defining Document") Defendant's Exh. G, Hudson's claim that between February and April 2001, Hudson's supervisor followed Hudson on her mail delivery route, Amended Complaint ¶¶ 28-29, was discussed with the EEO Counselor.  Issues Defining Document (stating Hudson was alleging discrimination "in that 1) in April 2001, (a) the Acting Station manager unnecessarily came out to inspect her route . . . .").  This claim has thus been exhausted.

Similarly, in the Supporting Statement Hudson attached to and submitted in connection with the Fourth EEO Complaint ("Supporting Statement") (Plaintiff's Exh. C),

---

[6] The name of the EEO Counselor who signed the "Defining of the Issues" document is not legible from the copy provided.

Hudson states that on June 22, 2004, she received a seven-day no time-off suspension for using unauthorized overtime on March 8 and 9, 2004.  Supporting Statement at 4. There is thus no merit to Defendant's assertion that Hudson failed to exhaust her claim that in March 2004, Hudson was criticized and harassed by her supervisor for incurring a unit of overtime while waiting to punch her time card, Amended Complaint ¶ 52.  Such alleged criticism and harassment would reasonably be expected to be considered within the scope of the agency's investigation of the administrative complaints.

As for Hudson's retaliation and hostile work environment claims, not only did Hudson check the box on the Fourth EEO Complaint form indicating she was claiming retaliation, in the Fourth EEO Complaint and Supporting Statement, Hudson specifically referenced her Third EEO Complaint, filed on July 21, 2001, and states she is seeking to "stop the hostile work environment, discrimination and retaliation."  Fourth EEO Complaint and Supporting Statement at 1, 5.  Thus, Hudson's retaliation claims post-dating July 21, 2001 were exhausted and, given its nature as "composed of a series of separate acts that collectively constitute one unlawful employment practice," Hudson's hostile work environment claim has also been exhausted.  *Morgan*, 536 U.S. at 117 ("Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the *entire* time period of the hostile environment may be considered by a court for the purposes of determining liability.") (bracketed text and underlining added and internal quotation omitted).

Furthermore, papers within the EEOC's file relative to Hudson's Third EEO Complaint establish that the EEO investigated possible retaliation in connection with such claim.  In particular, in the Issues Defining Document signed by both Hudson and

an EEO Counselor, it is expressly stated that "Counselee [Hudson] alleges discrimination based on race (Black) **and in retaliation for prior EEO activity** . . . ." Issues Defining Document (emphasis added).  As such, the record establishes that although Hudson did not specify on the Third EEO Complaint form that she was alleging retaliation for past EEO activity, the issue was nevertheless raised with the Postal Service's EEO Counselor and the EEOC was not deprived of its ability to investigate such issue.

Although the record is devoid of any indication that Hudson presented to the EEOC her disparate treatment claims that, after complaining to her supervisor on June 3, 2003, other supervisors stared at Hudson in an embarrassing and intimidating manner, Hudson received a letter of warning for failing to work in a safe manner, Amended Complaint ¶¶ 46-49, and that Hudson was criticized in February 2004 for sorting DPS mail, incurring overtime while waiting to punch out and underestimating the amount of overtime necessary to complete her mail delivery route, Amended Complaint ¶¶ 50-53, it is fair to say these claims nevertheless are sufficiently similar to the conduct complained of in the Third and Fourth EEO Complaints as to reasonably come within the scope of the EEOC's investigation of such EEO Complaints.  *Butts*, 990 F.2d at 1402-03.  Moreover, Hudson's complaints regarding the criticism of her overtime use and estimation in February 2004 allege conduct by Defendant carried out in a manner quite similar and in close temporal proximity to the alleged March 2004 overtime issues that have been exhausted.  *Id*.  Thus, on this record, these claims are also exhausted.

As such, Defendant's motion to dismiss for failure to exhaust should be GRANTED in part and DENIED in part.

3.    *Prima Facie* **Case**

Defendant seeks summary judgment on Hudson's retaliation and hostile work environment claims on the basis that Hudson cannot establish a *prima facie* case of such claims.  Defendant's Memorandum at 13-17, 20-25.  Hudson argues in opposition that because there has yet to be any discovery in this action, summary judgment is improper, and requests permission to conduct discovery pursuant to Rule 56(f). Plaintiff's Memorandum at 9-13, 19-25.

Initially, although a motion to dismiss pursuant to Rule 12(b)(6) may be converted to a motion for summary judgment "[w]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988), in the instant case, the court need not consider whether to convert Defendant's motion to one seeking summary judgment because Defendant has denominated the motion as seeking "partial summary judgment and/or dismissal of the Amended Complaint."  Defendant's Motion at 1. Defendant, however, fails to explain why summary judgment on the merits of Hudson's exhausted claims is sought given that discovery has yet to be conducted; rather, Defendant's basis for seeking partial summary judgment on the claims for which Hudson exhausted her administrative remedies is that Hudson is unable to demonstrate the elements necessary to establish a *prima facie* case for the claims, even though "the requirements for establishing a prima facie case under McDonnell Douglas [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

"Summary judgment should only be granted '[i]f *after discovery*, the nonmoving

party has failed to make a sufficient showing on an essential element of [its] case with

respect to which [it] has the burden of proof.'" *Hellstrom v. U.S. Dept. of Veterans

Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. United States*, 87 F.3d 60, 65

(2d Cir. 1996) (italics in original and further internal quotation omitted)).   "'The

nonmoving party must have had the opportunity to discover information that is essential

to his opposition to the motion for summary judgment.'" *Id.* (quoting *Trebor Sportswear

Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (further internal

quotation omitted)).   Further, "[o]nly in the rarest of cases may summary judgment be

granted against a plaintiff who has not been afforded the opportunity to conduct

discovery."   *Trammell v. Keane*, 338 F.3d 155, 161 n. 2 (2d Cir. 2003).

   In the instant case, Hudson has been afforded no opportunity to conduct any

discovery regarding the merits of her claims, including taking depositions.   Significantly,

a case for employment discrimination is often established based on circumstantial

evidence.   *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) ("direct

evidence of discriminatory intent [with regard to employment] is rare and such intent

often must be inferred from circumstantial evidence found in affidavits and

depositions"); *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997) ("Direct

evidence is not necessary, and a plaintiff charging discrimination against an employer is

usually constrained to rely on the cumulative weight of circumstantial evidence.").

   Defendant maintains that Hudson cannot show the requisite causal connection

for a retaliation claim, given that Hudson cannot show any protected activity was

followed closely in time by an adverse employment action because more than three

years elapsed between Hudson's filing of the First, Second and Third EEO Complaints,

and Hudson's initial retaliation claims in the Fourth EEO Complaint.  Defendant's

Memorandum at 13-17.  Defendant's argument, however, overlooks the Second

Circuit's instruction that "opposition to a Title VII violation need not rise to the level of a

formal complaint in order to receive statutory protection, [and] this notion of 'opposition'

includes activities such as 'making complaints to management . . . .'"  *Cruz v. Coach*

*Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (quoting *Sumner v. United States Postal*

*Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).  A plain reading of the Amended Complaint

demonstrates that Hudson alleges making complaints to Postal Service management of

perceived discriminatory conduct within several months of alleged adverse employment

action sufficient to support a retaliation claim.  *See*, *e.g.*, Amended Complaint ¶¶ 44-46

(June 3, 2003 complaint to Station Manager Czechowski about discriminatory

administration of discipline and being subjected to greater scrutiny than white

employees) and Amended Complaint ¶ 47 (June 3, 2003 letter of warning for "failing to

work safely").  Thus, there is no merit to Defendant's argument that Hudson cannot, as

a matter of law, establish the requisite causal connection necessary for a retaliation

claim.

        Defendant also argues Hudson cannot sustain her hostile work environment

claim because none of the facts alleged in support of such claim "even remotely rise to

the level required to establish a hostile work environment."  Defendant's Memorandum

at 22.  Defendant is, however, mistaken.

        "Title VII affords employees the right to work in an environment free from

discriminatory intimidation, ridicule, and insult."  *Meritor Savings Bank, FSB v. Vinson*,

477 U.S. 57, 65 (1986).  A hostile work environment claim is established if the plaintiff

demonstrates that (1) the alleged harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) a specific basis for imputing the conduct creating the hostile work environment to the employer.  *Feingold*, 366 F.3d at 149-50 (citing *Alfano*, 294 F.3d at 373).  Factors to be considered include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance.'" *Feingold*, at 150 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).  Further, "[a]s a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  *Id.* (quoting *Alfano*, at 374).  However, "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace."  *Alfano*, 294 F.3d at 374.

"The question of whether a work environment is sufficiently hostile to violate Title VII is one of fact," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001), yet summary judgment may be granted on such a claim where no reasonable factfinder could conclude, considering all the circumstances, that the alleged harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment were altered for the worse as a result of one of the form of discrimination prohibited by Title VII.  *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 600 (2d Cir. 2006).  Further, even if based on the race, color, religion, sex, or national origin of a plaintiff, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Baton Rouge*, 524 U.S. 775, 788 (1998).  Rather,

27

"[t]he incidents of allegedly offensive conduct must also be 'more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Holtz*, 258 F.3d at 75 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

The standard for establishing a hostile work environment is high, yet "the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*.'"  *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (italics in original)).  Although, to support a hostile work environment claim, the environment need not be unendurable or intolerable, that the law requires the harassment be severe or pervasive to be actionable "does not mean that employer are free from liability in all but the most egregious cases."  *Whidbee*, 223 F.3d at 70.

Here, Hudson's allegation that African-American Postal Service employees, like her, were subjected to managerial decision involving the elimination of park points, resulting in heavier mail cuts, which caused Hudson to injure herself on several occasions, sufficiently alleges a hostile work environment claim.  Specifically, if such allegations are found true by a reasonable fact finder, it follows that the fact finder could also find that the alleged offensive conduct altered the conditions of Hudson's employment for the worse.  Moreover, fact discovery could show that park points were eliminated as to African-American employees, but not as to white employees.  However, given that there has been no discovery to date, summary judgment on this issue is premature.

As such, Defendant's motion for summary judgment on the merits of the hostile

work environment claim, Amended Complaint ¶¶ 66-74, and retaliation claim, Amended Complaint ¶¶ 86-93, should be DENIED without prejudice.

### 4.      Rule 56(f) Discovery

Because the undersigned is recommending denying Defendant's motion, without prejudice, insofar as it seeks partial summary judgment on the basis that Hudson has failed to establish the requisite elements for her retaliation and hostile work environment claims, the court does not consider Plaintiff's motion for Rule 56(f) discovery but, instead, such motion is DISMISSED as moot.

### <u>CONCLUSION</u>

Based on the following, Defendant's motion for partial summary judgment or dismissal of the Amended Complaint (Doc. No. 17) should be GRANTED in part and DENIED in part without prejudice; Plaintiff's cross-motion seeking discovery pursuant to Rule 54(d) (Doc. No. 23) is DISMISSED as moot.

SO ORDERED, as to Plaintiff's motion
for Rule 56(f) discovery,

/s/ *Leslie G. Foschio*

_____
          LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

          Respectfully submitted, as to
          Defendant's motion for partial summary
          judgment and dismissal,

/s/ *Leslie G. Foschio*

_____
          LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       June <u>25</u>, 2007
             Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 25, 2007
                 Buffalo, New York